**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

ROGERS MEMORIAL HOSPITAL, INC.,

     Plaintiff,

-vs-                              Civil Action No. 2:26-cv-00691

NATIONAL LABOR RELATIONS BOARD, a
federal administrative agency, CRYSTAL
STOWE CAREY, in her official capacity as the
General Counsel of the National Labor Relations
Board, JAMES R. MURPHY, in his official
capacity as the Chairperson of the National Labor
Relations Board, SCOTT A. MAYER and
DAVID M. PROUTY, in their official capacities
as Board Members of the National Labor
Relations Board, and JENNIFER A. HADSALL,
in her official capacity as Regional Director of
Region 18 of the National Labor Relations Board,

     Defendants.

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Rogers Memorial Hospital, Inc. ("Rogers" or "Employer"), brings this action against Defendants National Labor Relations Board ("NLRB"), NLRB General Counsel Crystal Carey ("Carey"), NLRB Chairperson James R. Murphy ("Murphy"), NLRB Board Members Scott A. Mayer ("Mayer") and David M. Prouty ("Prouty") (Chairperson and Board Members are collectively referred to as "Members"), and NLRB Region 18 Regional Director Jennifer A. Hadsall ("Hadsall" or "Regional Director"), for declaratory and injunctive relief, alleging as follows:

## INTRODUCTION

1. This action arises from the NLRB's attempt to subject Rogers to administrative proceedings in NLRB case numbers 18-RC-380431 and 18-RC-380683 that violate Rogers' rights under the United States Constitution.

2. Rogers is likely to succeed on the merits of its constitutional claim that: (a) the NLRB's Board Members are unconstitutionally protected from removal in contravention of Article II of the Constitution; and (b) the Regional Director—an inferior officer of the NLRB—overseeing the administrative proceeding is likewise unconstitutionally protected from removal.

3. Rogers is likely to succeed on the merits of its claim that the NLRB has tortiously interfered with its provider contracts by directing an election that includes nurse practitioners and physician psychiatrists in the West Allis proposed unit.

4. Rogers will suffer irreparable economic and constitutional harm absent declaratory and injunctive relief because it will be compelled to undergo an unconstitutional proceeding before an insufficiently accountable agency official, and no adequate remedy at law exists to cure that injury. Rogers will also suffer irreparable economic harm absent declaratory and injunction relief because its providers will have a right to vote to assign their contractual rights and obligations to a third party and permit a breach of their employment agreements.

5. The balance of equities and public interest weigh in favor of Rogers. There is an unquestioned public interest in ensuring that federal agencies comply with the law and do not operate untethered to requirements imposed by the Constitution.

**JURISDICTION AND VENUE**

6. This action arises under the Constitution and laws of the United States. This Court has federal question jurisdiction under 28 U.S.C. § 1331 over Rogers' claims that fundamental aspects of the NLRB's structure violate the Constitution. *See, e.g.*, *Axon Enter., Inc.*, 143 S. Ct. at 900.

7. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Rogers' tortious interference with contract claim under Wisconsin law.

8. The Court has authority to grant declaratory and injunctive relief under the

2

Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, under the Administrative Procedure Act, 5 U.S.C. §§ 701-706, and under the Court's inherent equitable powers.

9. Venue is proper in this Court under 28 U.S.C. § 1391(e)(1)(B) because Defendants are officers of an agency of the United States and a substantial part of the events giving rise to the claim occurred in West Allis, Wisconsin.

## PARTIES

10. Rogers is a nationally recognized not-for-profit corporation providing evidence-based mental health and addiction services with corporate headquarters located in Oconomowoc, Wisconsin.

11. Defendant NLRB is an administrative agency of the United States, headquartered in Washington, D.C. The National Labor Relations Act ("NLRA") empowers the NLRB to initiate administrative proceedings to prevent unfair labor practices and for union elections, among other authority. *See* 29 U.S.C. § 160.

12. Defendant Carey is General Counsel of the NLRB. She is sued in her official capacity.

13. Defendant Murphy is the Chairperson of the NLRB. He is sued in his official capacity.

14. Defendant Mayer is a Member of the NLRB. He is sued in his official capacity.

15. Defendant Prouty is a Member of the NLRB. He is sued in his official capacity.

16. Defendant Hadsall is the Regional Director for Region 18 of the NLRB. She is sued in her official capacity.

## FACTS

17. Rogers is a nationally recognized not-for-profit corporation providing evidence-based mental health and addiction services with corporate headquarters located in Oconomowoc,

Wisconsin.

18. Rogers is Wisconsin's largest behavioral health services provider, with twelve locations, providing over 45% of all inpatient mental healthcare in the state.

19. Rogers is staffed with highly qualified mental health professionals, including therapists, behavioral specialists, nurses, and other professional staff, which are led and directed by providers, including physicians and nurse practitioners.

20. Rogers centralizes its treatment to serve the needs of Wisconsin residents utilizing a hub-and-spoke model of care where its hospitals located in Brown Deer, Oconomowoc, and West Allis serve as the "hub" of treatment for inpatient hospitalization and residential treatment and the clinics located in Appleton, Brown Deer, Kenosha, Madison, Manitowoc, Oconomowoc, Sheboygan, Wausau, and West Allis serve as the "spoke" where patients are provided various levels of ongoing treatment through partial hospitalization, intensive outpatient, and counseling.

21. This hub-and-spoke care model is specifically designed to serve the hundreds of patients that regularly move through multiple levels of care every year.

22. All aspects of care are integrated and interconnected across Rogers' twelve locations. Both providers and other members of the treatment teams see patients across Rogers' twelve locations. None of the clinics function independently of the other due to the need to service similar patients across a care continuum.

23. Once a patient is admitted to one of the facilities, they receive a multi-disciplinary treatment team of physicians, therapists, behavioral specialists, nurses, and members of management that manage their day-to-day care.

24. Providers (physicians and nurse practitioners) lead these teams and are ultimately responsible for determining the type, frequency, and delivery of care. Providers directly guide and

oversee the treatment team's day-to-day execution of the treatment plan and regularly audit the work of the team to ensure that medical orders are followed.

25. Critically, each of Rogers' nurse practitioners and physician psychiatrists is a party to an individual Allied Health Professional Employment Agreement ("Agreement") that constitutes the complete and exclusive agreement governing that provider's employment. Each Agreement provides that it embodies the complete agreement and understanding among the parties and that its terms supersede and shall be controlling over any prior promises, covenants, or representations. These individually negotiated agreements comprehensively govern the terms and conditions of each provider's employment, including: clinical duties and the exercise of independent professional medical judgment; individually negotiated compensation and productivity standards calibrated to comply with the Stark Law and Anti-Kickback Statute; confidentiality protections covering Rogers' trade secrets, patient records, and proprietary operational information; restrictive covenants; and termination provisions.

26. The National Union of Healthcare Workers ("NUHW" or "Union") filed two separate Representation-Certification Petitions against Rogers.

27. On February 4, 2026, the Union filed a petition with the NLRB in case number 18-RC-380431, seeking to represent certain employees, including nurse practitioners and physician psychiatrists, at Rogers' West Allis Outpatient Center, located at 2424 S. 102nd West Allis, Wisconsin 53227 ("West Allis Clinic").

28. On February 9, 2026, the Union filed a petition with the NLRB in case number 16-RC-380683[1], also seeking to represent certain employees at Rogers' Madison Behavioral Health

---

[1] This matter was originally filed as 18-RC-380191 on January 29, 2026. That case has since been closed and re-opened as 18-RC-380683.

Treatment Center, located at 406 Science Drive, Suite 110, Madison, Wisconsin 53711 ("Madison Clinic").

29.     Rogers adamantly opposes the RC Petitions as the single-facility units are not appropriate units and the nurse practitioners and physician psychiatrists are managerial and/or supervisory employees who lack a community of interest with the proposed units.

30.     On February 11, 2026, Regional Director consolidated the cases for hearing. A hearing officer, acting on behalf of the Regional Director, held a consolidated hearing on both petitions on February 23, 24, 25, and 27, 2026.  The hearing officer made clear that the NLRB would not make credibility determinations of witnesses.

31.     On April 14, 2026, Region 18 Regional Director, Jennifer A. Hadsall, issued a Decision, Order Severing Cases, and Directions of Election in NLRB Case Numbers 18-RC-380431 (West Allis Clinic) and 18-RC-380683 (Madison Clinic) (the "Decision").

32.     In that Decision, the Regional Director severed the two representation cases and held that separate single-facility bargaining units were appropriate at both the West Allis Clinic and the Madison Clinic, rejecting Rogers' position that the petitions were required to proceed, if at all, in a single Wisconsin-wide unit encompassing Rogers' 13 Wisconsin facilities.

33.     In Case No. 18-RC-380431 (West Allis Clinic), the Regional Director further held that the nurse practitioners and physician psychiatrists were not managerial employees, were not statutory supervisors, and shared a sufficient community of interest with the other petitioned-for employees to be included in the professional voting group.

34.     The Decision then directed separate secret-ballot elections for April 22, 2026 from 6:30 a.m. to 9:00 a.m. and from 3:30 p.m. to 5:30 p.m., at the West Allis Clinic and the Madison Clinic.

6

35. The Regional Director's Decision lacked support in fact and law. The Region's Decision departs from established precedent and is erroneous on the record as to several substantial factual issues necessitating review, including, but not limited to, the following:

- It inaccurately finds that providers located in the West Allis campus are employed by the West Allis clinic.

- It inaccurately finds that providers are not members of management.

- It failed to test the credibility of witnesses and gave improper weight to testimony, including from Nurse Practitioner, Stephani Lohman, irrespective of whether it was inaccurate, misleading and motivated by bias.

- It failed to give sufficient weight to Rogers' witnesses including the Chief Operating Officer who oversees all Rogers' operations in Wisconsin and other providers who testified that a nurse practitioner and psychiatrist serve in leadership roles and are part of the management team.

- Additionally, the Regional Director did not permit testimony concerning the significant and negative impact separate petitioned-for units would have on Rogers.

36. In addition to the errors in the Decision itself, and in direct violation of the NLRB's own rules, the Regional Director accepted a false Certification filed by the NUHW which certifies that former employee, Stephani Lohman, is an "employee of the employer" when, in fact, she was terminated on February 9, 2026.

37. To seek relief from the Regional Director's erroneous Decision, Rogers is required to seek a request for review by the NLRB within ten days of final disposition.

38. The request for review does not stay the April 22, 2026 election. Rather, Rogers must also file a request for a stay with the NLRB.

7

39. To preserve its rights, on April 19, 2026, Rogers sought a stay of the election pending its request for review while it sought court intervention.

40. While Rogers has taken actions to preserve its rights, it should not be required to proceed before the NLRB in requesting its stay of the election or requesting review of the Regional Director's unfounded Decision and improper post-Decision actions because the structure of the proceeding violates the United States Constitution. The Members who lead the NLRB are unconstitutionally insulated from removal and, likewise, the statutory removal restrictions associated with the Regional Director—an inferior officer of the NLRB, also violate the President's removal power and render the office of the Regional Director unconstitutional in the same way as NLRB Members.

41. In addition, the Regional Director's Decision direction an election that includes nurse practitioners and physician psychiatrists in the West Allis proposed unit tortiously interferes with Rogers' existing Agreements with these providers. A collective bargaining agreement would supersede and conflict with these individually negotiated Agreements, causing unquantifiable harm to Rogers' ability to direct patient care, maintain regulatory compliance, and retain its providers.

**CAUSES OF ACTION**

**COUNT I**

**THE NLRB'S MEMBERS AND REGIONAL DIRECTORS
ARE UNCONSTITUTIONALLY INSULATED FROM REMOVAL**

42. Rogers incorporates by reference the above paragraphs.

43. The NLRB's Members exercise substantial executive power under the Constitution in administering and enforcing the provisions of the NLRA. Such powers include the authority to exercise prosecutorial power in federal district courts, 29 U.S.C. § 160(j); to determine units for

8

the purpose of collective bargaining, direct representation elections, decide unfair labor practice charges, issue subpoenas, 29 U.S.C. §§ 159, 160; and engage in policy and rulemaking on topics such as the standard for determining joint employer status, appropriate units in the healthcare industry, etc., *see NLRB v. Wyman-Gordon Co.*, 394 U.S. 759 (1969).

44. The NLRA permits removal of Board Members only "for neglect of duty or malfeasance in office," and explicitly prohibits removal for any other cause, like inefficiency, 29 U.S.C. § 153(a).

45. The combination of the NLRB Members' strict removal protections and exercise of substantial executive powers violates Article II of the Constitution.

46. Because of these restrictions on the President's Article II authority, the NLRB Members need not concern themselves in the least with how the President may view their actions during the proceedings against Rogers or constrain their actions accordingly.

47. Similarly, the statutory removal restrictions associated with the Regional Directors—an inferior officer of the NLRB—violate the President's removal power and renders the office of the Regional Director unconstitutional.

48. Rogers is entitled to declaratory relief sufficient to ensure that the administrative standards to which Rogers is subject will be enforced only by a constitutional agency accountable to the Executive.

49. Rogers bears a strong likelihood of success for the reasons stated above.

50. Absent injunctive relief, Rogers lacks an adequate remedy at law. Without interim relief from this Court, Rogers will suffer immediate and irreparable harm by being compelled to participate in and submit to an election and related review process conducted by NLRB Members

9

and a Regional Director who are unconstitutionally insulated from meaningful presidential oversight.

51. Moreover, if the NLRB Members issue a final order against Rogers, the constitutional injury will likely be irremediable because retrospective relief is not available to parties who are subjected to an unconstitutional proceeding by improperly insulated administrative agency officials.

52. The harm to Rogers, in the event declaratory and injunctive relief is not granted, far outweighs any harm, or mere inconvenience, to the NLRB if such relief is granted.

53. The public interest is best served by not allowing the NLRB to continue to operate in an unconstitutional manner.

### COUNT II

### THE NLRB'S TORTIOUSLY INTERFERED WITH ROGERS' CONTRACTS

54. Rogers incorporates by reference the above paragraphs.

55. Rogers has existing contracts with its providers. Rogers has entered into individual Agreements with each of its nurse practitioners and physician psychiatrists. The Agreements are fully executed, written contracts that comprehensively govern the terms and conditions of each provider's employment, including, but not limited to, clinical duties, compensation, confidentiality obligations, restrictive covenants, and termination rights. Each Agreement provides that it embodies the complete agreement and understanding among the parties and that its terms supersede and shall be controlling over any prior promises, covenants, or representations. The Agreement also expressly provides that it cannot be assigned to third parties.

56. The NLRB interfered with Rogers' contractual relationships. The NLRB's direction of an election that includes Rogers' nurse practitioners and physician psychiatrists in

10

proposed bargaining units constitutes interference with Rogers' Agreements. If the election proceeds and a majority of proposed bargaining unit members elect to join the Union, the nurse practitioners and physician psychiatrists would assign their terms and conditions of employment to a third party and any subsequently negotiated would supersede and conflict with the individually negotiated provisions of the Agreements governing compensation, clinical duties, post-employment obligations, confidentiality protections, termination, among other terms and conditions of employment.

57. The NLRB is not a party to the Agreements, rather, it is a third party intending to interfere with the Agreements.

58. The NLRB's interference is intentional as it knows its conduct is certain or substantially certain to interfere with the Agreements. Indeed, it is considering an unfair labor practice charge challenging the termination of one of the providers which is governed exclusively by an employment agreement. The NLRB is on notice that Rogers' nurse practitioners and physician psychiatrists are parties to individual employment agreements based on evidence Rogers presented during the pre-election hearing.

59. There is a causal connection between Defendants' interference and Rogers' damages. The Regional Director directed an election including the nurse practitioners and physician psychiatrists. If the election proceeds and a union is certified, a collective bargaining agreement will be negotiated, which will, by operation of federal labor law, govern the terms and conditions of employment for the nurse practitioners and physician psychiatrists. Those terms will necessarily supersede and conflict with the individually negotiated Agreements. Rogers will face harm in the form of disruption of its ability to direct patient care, maintain regulatory compliance with the Stark Law and Anti-Kickback Statute, protect proprietary and patient information, enforce

post-employment obligations, and immediately remove providers whose conduct threatens patient safety. These harms flow directly from the NLRB's direction of the election.

60. The NLRB cannot establish it is justified or privileged to interfere with Rogers' contracts. Indeed, the NLRB Members and Regional Director who are directing the election are unconstitutionally insulated from Presidential removal, and the proceedings themselves are constitutionally defective. An agency acting through an unconstitutional structure cannot claim that its interference with existing contractual rights is justified or privileged.

61. Rogers bears a strong likelihood of success on this claim, as established by the facts set forth above.

62. The harm to Rogers, in the event declaratory and injunctive relief is not granted, far outweighs any harm, or mere inconvenience, to the NLRB if such relief is granted.

63. The grant of injunctive and declaratory relief on this claim will serve the public interest by not allowing the NLRB to continue to operate in an unconstitutional manner.

## **REQUEST FOR RELIEF**

Based on the foregoing, Rogers respectfully requests that the Court order the following relief and enter judgment:

1. Declaring that:

   a. The statutes, regulatory provisions, guidance, and/or policies restricting the removal of NLRB Members and Regional Directors, including 29 U.S.C. § 153(a), are unconstitutional;

2. Preliminarily enjoining Defendants from subjecting Rogers to unconstitutionally structured administrative proceedings scheduled for April 22, 2026;

3. Preliminarily enjoining Defendants from interfering with Rogers' contracts;

4. Permanently enjoining Defendants from implementing or carrying out the unconstitutional removal-protection provisions identified above;

5. Permanently enjoining Defendants from interfering with Rogers' contracts;

6. Awarding Rogers its costs and expenses incurred in bringing this action, including, but not limited to, reasonable attorneys' fees; and

7. Awarding such other and further relief, whether at law or in equity, as the Court deems just and proper.

Dated: April 20, 2026

*/s/ Chelsea A. McCarthy*
Chelsea A. McCarthy
IL Bar No. 6288964
Attorney for Plaintiff
150 N. Riverside Plaza, Suite 2700
Holland & Knight LLP
Chicago, IL 60606
Telephone: 1.312.263.3600
E-mail: chelsea.mccarthy@hklaw.com

Aron Z. Karabel, *Request for Admission Pending*
TN Bar No. 031828
Attorney for Plaintiff
Holland & Knight LLP
511 Union Street, Suite 2700
Nashville, TN 37219
Telephone: 1.615.244.6380
E-mail: aron.karabel@hklaw.com

Hannah J. Fitzgerald, *Request for Admission Pending*
CO Bar No. 58292
Attorney for Plaintiff
Holland & Knight LLP
1801 California Street, Suite 5000
Denver, CO 80202
Telephone: 1.303.974.6660
E-mail: hannah.fitzgerald@hklaw.com
